UNITED STATES BANKRUPTCY COURT
EASEERN DISTRICT OF WISCONSIN

___

In re

JEFF L. CARLSON,

Debtor.

Case No. 10-38400

Chapter 7

___

BAYTHERM INSULATION, INC.,

Plaintiff,

v.

JEFF L. CARLSON,

Defendant.

Adversary No. 10-2702

___

MEMORANDUM DECISION ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
___

The plaintiff, Baytherm Insulation, Inc., brought this adversary proceeding objecting to the dischargeability of certain obligations incurred by the defendant, Jeff Carlson. After the defendant filed his answer, the plaintiff moved for summary judgment asserting it was entitled to a nondischargeable judgment pursuant to 11 U.S.C. § 523(a)(4).

This Court has jurisdiction under 28 U.S.C. § 1334 and this is a core proceeding under 28 U.S.C. § 157(b)(2)(I). This decision constitutes the Court's findings of fact and conclusions of law under Fed. R. Bankr. P. 7052. For the reasons stated herein, the plaintiff's motion for summary judgment is granted.

BACKGROUND

The debtor owned and operated a sole proprietorship business known as Carlson Homes and, at all times relevant to this proceeding, acted as a prime contractor on two construction

projects. In the spring and fall of 2008, the debtor requested that Baytherm Insulation, Inc., as subcontractor, supply labor and insulation materials for improvement of properties in Collins and Kaukana, Wisconsin. The debtor received payment in full from the owners of both properties but never paid Baytherm.

On or about April 15, 2009, Baytherm filed an Amended Summons and Amended Complaint in the Calumet County Circuit Court, alleging, among other things, theft by contractor in violation of section 779.02(5), Wis. Stats. The parties later entered into a Stipulation for Dismissal of the suit which read as follows:

> IT IS STIPULATED and agreed by the Plaintiff, by its attorney, and the Defendant that the Complaint filed in this action should be dismissed not on the merits, without prejudice, without fees or costs, and subject to Plaintiff's right to reopen and take judgment on the following terms and conditions:
>
> 1. Defendant shall pay the aggregate sum of $6,019.94 to Plaintiff as follows:
>
>    a. Six (6) monthly installments in the amount of $150.00, due on the first day of each month, commencing July 1, 2009, ending December 1, 2009;
>
>    b. Sixteen (16) monthly installments in the amount of $300.00 due on the first day of each month, commencing January 1, 2010, ending April 1, 2011;
>
>    c. A balloon payment in the amount of $319.94 due on May 1, 2011;
>
>    d. All payments shall be made by check payable to Baytherm Insulation, Inc. and delivered to Thomas S. Wroblewski, S.C., 180 Main Street, Menasha, Wisconsin 54952 on or before the due date.
>
> 2. If Defendant fails to make any payment required by Paragraph 1 above, Plaintiff shall have the right to reopen this matter, without further notice to Defendant of any kind, Defendant specifically waiving the same, and to take judgment by affidavit against the Defendant for treble the amount of damages caused by Defendant's theft by contractor, to wit: $14,268.00, plus all reasonable actual attorney fees and costs incurred by Plaintiff, less any amounts paid pursuant to Paragraph 1.

> 3. If Plaintiff reopens this matter and moves for judgment according to Paragraph 2 above, Defendant specifically waives any right to object to or contest Plaintiff's right to recover the amounts demanded in the Complaint, including but not limited to any such objection in the form of an answer or affirmative defense to the allegations of the Complaint, except Defendant may object to the sole issue of whether Plaintiff gave due credit to Defendant for amounts paid pursuant to paragraph 1, above.

(Stipulation and Order for Dismissal, Calumet County Circuit Court Case No. 09 CV 135, signed June 25 & 29, 2009). The stipulation was approved by the judge and the Order for Dismissal was entered on July 6, 2009.

After making one payment of $150.00 on July 1, 2009, the debtor failed to comply with the remaining terms of the stipulation and order, and a money judgment was entered upon the submission of an affidavit from plaintiff's counsel. The state court judge found Baytherm was entitled to judgment against the debtor according to the demands of the complaint and entered judgment "in the sum of $16,221.98, plus any future disbursements, costs, and attorneys' fees which may be incurred during collection of its Judgment." (Money Judgment, Calumet County Circuit Court Case No. 09 CV 135, entered September 3, 2009).

The debtor filed a chapter 13 petition on November 17, 2010, and converted to chapter 7 on July 26, 2011.

## ARGUMENTS

The plaintiff urges this Court to follow its previous rulings in *In re Dinkins*, 327 B.R. 918 (Bankr. E.D. Wis. 2005), and *In re Ecker*, 400 B.R. 669 (Bankr. E.D. Wis. 2009), wherein no wrongful intent was deemed necessary for a finding of nondischargeability when the defendant has violated the state theft by contractor statute. Funds received by the debtor from the owners of property which the plaintiff improved constituted trust funds in the hands of the debtor and the

latter was responsible for maintaining such funds in trust for the plaintiff pursuant to section 779.02(5), Wis. Stats. The debtor breached his fiduciary obligations, the state court entered a money judgment against him, and the resulting debts are nondischargeable under 11 U.S.C. § 523(a)(4).

The defendant did not file a response to the plaintiff's brief. In his answer, he denied the obligation was nondischargeable.

## DISCUSSION

Summary judgment is required "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To determine if there is a genuine issue of material fact, all facts are construed in the light most favorable to the non-moving party. *Heft v. Moore*, 351 F.3d 278, 282 (7th Cir. 2003). Additionally, all reasonable inferences are drawn in favor of that party. *Id*. However, the non-movant must set forth "specific facts showing that there is a genuine issue for trial" which requires more than "just speculation or conclusory statements." *Id*. at 283 (citations omitted).

Section 523(a)(4) of the Bankruptcy Code excepts from discharge any debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." The elements required to establish a nondischargeable debt for defalcation under this section are: (1) the existence of a trust; (2) the debtor is a fiduciary of that trust; and (3) fraud or defalcation by the debtor while acting as a fiduciary of the trust. *In re Ecker*, 400 B.R. at 671 (citations omitted). The bankruptcy court must look to state law to determine whether the requisite trust relationship exists. *Id*.

The "theft by contractor" provisions of sections 779.02(5) and 779.16, Wis. Stats., create

4

a trust fund for sums paid by a property owner to a general contractor for the benefit of subcontractors and material suppliers. *Kraemer Bros., Inc. v. Pulaski State Bank*, 138 Wis. 2d 395, 399-400, 406 N.W.2d 379, 381 (1987). Wisconsin's theft by contractor statute establishes the type of express statutory trust contemplated by section 523(a)(4) of the Bankruptcy Code. *See Matter of Thomas*, 729 F.2d 502 (7th Cir. 1984) (applying Wis. Stat. § 779.16, theft by contractor statute for public improvements, which provides the same trust fund requirement for general contractors for private improvements).

> Section 779.02(5) provides, in relevant part:
>
> Theft by Contractors. [A]ll moneys paid to any prime contractor or subcontractor by any owner for improvements, constitute a trust fund only in the hands of the prime contractor or subcontractor to the amount of all claims due or to become due or owing from the prime contractor or subcontractor for labor, services, materials, plans, and specifications used for the improvements, until all the claims have been paid .... The use of any such moneys by any prime contractor or subcontractor for any other purpose until all claims ... have been paid in full or proportionally in cases of a deficiency, is theft by the prime contractor or subcontractor of moneys so misappropriated and is punishable under s. 943.20.

Wis. Stat. § 779.02(5).

The bankruptcy courts in Wisconsin have developed different treatments for the third element of section 523(a)(4), whether the debtor committed fraud or defalcation while acting as a fiduciary of the trust. This Court has traditionally applied a per se approach to violations of the state theft by contractor statute, without regard to any precise lack of care exercised by the debtor. *See In re Dinkins*, 327 B.R. at 923 (holding "[n]o wrongful intent is required for a finding of nondischargeability. It is only necessary for the plaintiff to prove that funds received from the owner should have been paid to a beneficiary of the statutory trust, and [that] the debtor failed to do so."); *In re Ecker*, 400 B.R. at 673 (same). Likewise, the Seventh Circuit in *Matter*

5

*of Thomas*, 729 F.2d 502, 505-06 (7th Cir. 1984), interpreting a similar statute relating to public works,[1] held that the general contractor satisfied its burden of establishing nondischargeability by showing the it paid the debtor subcontractors $17,894.54 to complete the work and that "the defalcation by defendants occurred when they used this trust fund for their own purposes." In that case, the defendants' "own purposes" included their home mortgages and other unrelated business debts. While it is possible that the other business debts were innocently paid, the case was remanded to determine only if any of the payments were applied to the plaintiff's project. Apparently, no other proof or evidence of wrongful conduct was necessary.

Judge Martin has disagreed with the per se approach and concluded "that something akin to 'reckless' may be the appropriate standard," and in his case, found that "more than mere negligence" was the correct standard. *In re Koch*, 197 B.R. 654, 658 (Bankr. W.D. Wis. 1996) (applying standard for defalcation set by *Meyer v. Rigdon*, 36 F.3d 1375, 1382-85 (7th Cir. 1994)). Judge Pepper agreed with his reasoning in *Ganther Constr., Inc. v. Ward (In re Ward)*, 417 B.R. 582, 592 (Bankr. E.D. Wis. 2009), and *Levine v. Ward (In re Ward)*, 425 B.R. 507, 526 (Bankr. E.D. Wis. 2010).

---

[1]Wis. Stat. § 779.16, Theft by Contractors, provides, in relevant part, the following:

All moneys, bonds or warrants paid or to become due to any prime contractor or subcontractor for public improvements are a trust fund only in the hands of the prime contractor or subcontractor to the amount of all claims due or to become due or owing from the prime contractor or subcontractor for labor, services, materials, plans, and specifications performed, furnished, or procured for the improvements, until all the claims have been paid, and shall not be a trust fund in the hands of any other person. The use of any such moneys by any prime contractor or subcontractor for any other purpose until all claims , except those which are the subject of a bona fide dispute and then only to the extent of the amount actually in dispute, have been paid in full or proportionally in cases of a deficiency, is theft by the prime contractor or subcontractor of moneys so misappropriated and is punishable under s. 943.20.

Case 10-02702-mdm    Doc 12    Filed 08/30/11    Page 6 of 14

Judge Utschig was faced with the issue when the debtor argued he was merely a negligent member of the prime contractor limited liability company that failed to pay a supplier, and he exercised no control over the company's finances or checking account and was not personally involved in any misappropriation of trust funds. *In re Rieck*, 439 B.R. 698 (Bankr. W.D. Wis. 2010). The court determined material facts in dispute regarding whether or not the debtor knowingly or recklessly breached his fiduciary duty, and this precluded summary judgment. Notably, the court stated, "[I]f the defendant was responsible for the company's accounts, was aware of the trust fund requirements, or was more than simply an innocent bystander 'peripherally involved' in what happened to the plaintiffs' funds, the plaintiffs may be able to demonstrate more than mere negligence on his part." *Id*. at 703. The *Rieck* court thus applied a relatively low culpability standard while recognizing that innocent or unintentional defalcations may be discharged by a corporate officer.

Judge Kelley recently explored the degree of fault necessary to constitute defalcation in *In re Mueller*, 10-23917, 2011 WL 2360122 (Bankr. E.D. Wis. June 8, 2011). She noted that courts have progressed from earlier strict interpretations of defalcation that included innocent mistakes to more recently requiring a higher threshold of wrongful conduct. In light of the case law, Judge Kelley concluded that

> [A] creditor seeking to succeed on a claim of defalcation under section 523(a)(4) must establish something more than mere negligence: the creditor must set forth facts establishing a willful, knowing, or reckless breach of duty. Knowledge of the theft by contractor law on its own does not constitute proof of defalcation. The court should consider whether other factors exist, such as whether the debtor acted in his own self-interest or merely showed what in hindsight amounted to poor judgment.

*Id*. at *3.

7

After the debtor in this case defaulted on the parties' agreed payment schedule, the originally-stipulated award of $6,019.94 was trebled to $16,221.98, plus any future disbursements, costs, and attorney's fees which may be incurred during collection. As defined in the Bankruptcy Code, "'debt' means liability on a claim." 11 U.S.C. § 101(12). The plaintiff's judgment unarguably is a claim in the bankruptcy case; it is a final and unappealed judgment. Since the full amount of a judgment is a valid claim, the $16,221.98 award cannot be modified, and the only issue before this Court is whether it is nondischargeable. *See In re Back Bay Restorations, Inc.*, 118 B.R. 166, 169-70 (Bankr. D. Mass. 1990) (bankruptcy courts bound by prior judgments of amount of resulting damages).

It is well established that collateral estoppel or issue preclusion applies in bankruptcy proceedings. *Grogan v. Garner*, 498 U.S. 279, 285, 111 S.Ct. 654 (1991). As a matter of full faith and credit a federal court must apply the forum state's law of issue preclusion when it determines the preclusive effect of a state court judgment. 28 U.S.C. § 1738; *Stephan v. Rocky Mountain Chocolate Factory, Inc.*, 136 F.3d 1134, 1136 (7th Cir. 1998). Additionally, the forum state's law of issue preclusion applies in determining the dischargeability of debt. *Bukowski v. Patel*, 266 B.R. 838, 842 (E.D. Wis. 2001) (citing *Matter of Bulic*, 997 F.2d 299, 304 n. 6 (7th Cir. 1993)). Accordingly, whether issue preclusion applies must be determined according to Wisconsin law.

Under Wisconsin law issue preclusion is a doctrine designed to limit relitigation of issues that were contested in a previous action between the same or different parties. *Mrozek v. Intra Fin. Corp.*, 2005 WI 73, ¶ 17, 281 Wis.2d 448, 699 N.W.2d 54; *Michelle T. by Sumpter v. Crozier*, 173 Wis.2d 681, 687, 495 N.W.2d 327, 329 (1993) (citing *Lawlor v. Nat'l Screen Serv.*

*Corp.*, 349 U.S. 322, 75 S.Ct. 865 (1955)). Accordingly, when an issue is actually litigated and determined by a valid final judgment and the determination is essential to the judgment, it is conclusive in a subsequent action whether on the same or a different claim. *Landess v. Schmidt*, 115 Wis.2d 186, 197, 340 N.W.2d 213, 219 (Ct. App. 1983) (citing Restatement (Second) of Judgments § 27 (1982)).

Thus, a threshold prerequisite for application of the doctrine is that, in order to be precluded from "relitigating" an issue, a party must have "actually litigated" it previously. By contrast, a determination is not conclusive "as to issues which might have been but were not litigated and determined in the prior action." *City of Sheboygan v. Nytsch*, 2006 WI App 191, ¶ 12, 296 Wis.2d 73, 722 N.W.2d 626 (citing Restatement (Second) of Judgments at § 27 cmt. e). As explained in *Nytsch*:

> An issue is not actually litigated if the defendant might have interposed it as an affirmative defense but failed to do so; nor is it actually litigated if it is raised by a material allegation of a party's pleading but is admitted (explicitly or by virtue of a failure to deny) in a responsive pleading; nor is it actually litigated if it is raised in an allegation by one party and is admitted by the other before evidence on the issue is adduced at trial; *nor is it actually litigated if it is the subject of a stipulation between the parties*.

*Id.* (quoting Restatement (Second) of Judgments at § 27 cmt. e; emphasis added).

Since it appears that Wisconsin courts would not treat the admission in the parties' stipulation that the plaintiff could obtain a judgment "for treble the amount of damages caused by Defendant's theft by contract" as having actually litigated the debtor's criminal intent to defraud,[2] this Court will not apply the doctrine of issue preclusion to the debtor's intent. *Cf. Klingman v.*

---

[2] Treble damages are available under section 895.446, Wis. Stat., for theft by contractor, provided the elements of both the criminal and civil statutes, sections 779.02(5) and 943.20, Wis. Stats., are proven by the civil preponderance burden of proof. *See Tri-Tech Corp of America v. Americomp Servs., Inc.*, 2002 WI 88 ¶ 24, 254 Wis.2d 418, 646 N.W.2d 822.

9

*Levinson*, 831 F.2d 1292, 1296 n. 3 (7th Cir. 1987) (noting "a debtor may stipulate to the underlying facts that the bankruptcy court must examine to determine whether a debt is dischargeable"). In this case, the defendant entered into a stipulation in the state case that the damages sprang from the "Defendant's theft by contractor," thus implicating the statute and its corresponding fiduciary duty and breach thereof, but it does not admit any wrongful intent, recklessness, mistake, or negligence.

The issue in this case boils down to whether damages resulting from a violation of the Wisconsin theft by contractor statute, which establishes liability for nonpayment from the statutory trust fund for any reason, is sufficient for a finding of nondischargeability under 11 U.S.C. § 523(a)(4). Under Wisconsin law, the trust fund is established by statute, and liability is established solely by nonpayment. *See Kraemer Bros.*, 138 Wis.2d at 400-02 (liability established when funds could be traced to the owner; no other standard of wrongdoing applied). If violation of the statute constitutes defalcation, issue preclusion would apply, and the matter can be decided on summary judgment. If more than mere negligence would be required to constitute defalcation, as other Wisconsin bankruptcy cases have opined, a trial is necessary to more fully develop the defendant's culpability.

For the most part, Wisconsin bankruptcy courts that have held defalcation requires more than mere negligence, relying on the standards established by the Seventh Circuit in *Meyer v. Rigdon*, 36 F.3d 1375 (7th Cir. 1996). However, that case was decided under 11 U.S.C. § 523(a)(11)[3], not (a)(4). The case goes into considerable detail in the legislative history of

---

[3]Section 523(a)(11) provides:

A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not

10

subsection (a)(11), and Congress' intention in enacting this subsection, especially since the actions addressed would already be excepted from discharge under subsection (a)(4). The court concluded that subsection (a)(11) was narrower than (a)(4), and Congress intended to negate the application of collateral estoppel (issue preclusion) when defalcation was with respect to a depository institution, even when the matter is determined by default and not litigated. *Id*. at 1379. The court explained: "If the debt results from a final judgment arising from the debtor's fraud or 'defalcation' while acting in fiduciary capacity of a depository institution, the debt is *per se* nondischargeable in bankruptcy. No additional evidence need or may be submitted to the bankruptcy court – the debtor is estopped from challenging the nondischargeability of his debt." *Id*. at 1381-82. The court then stated that "The existence of a fiduciary relationship is a question of federal law under section 523(a)(11)" and went on to review federal banking definitions to determine that the defendant was subject to fiduciary duties. *Id*. at 1382. To determine if the former bank president debtor breached these duties, the court discussed the split among circuits as to whether something more than negligence or inadvertence would be required for

---

> discharge an individual debtor from any debt – ...
>> (11) provided in any final judgment, unreviewable order, or consent order or decree entered in any court of the United States or of any State, issued by a Federal depository institutions regulatory agency, or contained in any settlement agreement entered into by the debtor, arising from any act of fraud or defalcation while acting in a fiduciary capacity committed with respect to any depository institution or insured credit union[.]

11 U.S.C. § 523(a)(11).

11

Case 10-02702-mdm    Doc 12    Filed 08/30/11    Page 11 of 14

nondischargeability under subsection (a)(11). The court decided that it did, *id*. at 1384-85, and then analyzed the underlying judgment to see if wrongful intent or recklessness was pled in the complaint. It was, so the court determined the debt was *per se* not subject to discharge. Faithful to the Congressional intent, the underlying default judgment was not subject to the application of issue preclusion and bankruptcy court review.

Nowhere in the opinion did the court state it was changing the developed law with respect to theft by contractor cases under 11 U.S.C. § 523(a)(4). Due to the paucity of cases under subsection (a)(11), most of the cases cited were decided under subsection (a)(4). However, the court repeatedly limited its holding to cases under (a)(11).[4] There may be a good reason to do so, since the court held issue preclusion would not apply to breaches involving depository institutions. Issue preclusion would still apply to default judgments, stipulations, and consent decrees under subsection 523(a)(4). *Id*. at 1379.

When an adversary proceeding alleging nondischargeability under 11 U.S.C. § 523(a)(4) is brought, the law regarding creation of fiduciary relationships often arises under state law, and state law would be applied to determine if there was a breach. Here, the applicable law creates a trust and states that once the owner pays for work, the "use of any such moneys by any prime contractor or subcontractor for any other purpose . . . is theft by the prime contractor or subcontractor of moneys so misappropriated." Wis. Stat. § 779.02(5). Presumably, use of the

---

[4]"[M]ere negligent breach of a fiduciary duty is *not* a 'defalcation' under section 523(a)(11)." *Meyer*, 36 F.3d at 1385. "[W]e cannot say that Congress intended for a debt arising from a mere negligent breach of fiduciary duty to be excepted from discharge under section 523(a)(11)." *Id*. "Since a knowing breach of fiduciary duty is more culpable than a mere negligent breach of duty, we conclude that the FDIC's complaint does allege a 'defalcation' as that term is used in section 523(a)(11)." *Id*.

12

words "theft" and "misappropriated" was not an accident of the Wisconsin legislature. Theft is synonymous with "larceny," which is also not subject to discharge under subsection 523(a)(4).[5] Wisconsin case law does not require any showing other than receipt of moneys from the owner by the prime (or superior) contractor and failure to pay over those traceable funds to the appropriate supplier of goods and services who contributed to the project. *See Kraemer Bros.*, 138 Wis.2d 395; *W.H. Major & Sons, Inc., v. Krueger*, 124 Wis.2d 284, 369 N.W.2d 400 (Ct. App. 1985) In essence, wrongdoing is imputed by statute by characterizing the failure as "theft," and by referring to the funds not transmitted to the supplier as "misappropriated." The Seventh Circuit, applying an analogous Wisconsin statute that also characterized failure to pay subcontractors as "theft," remanded a case only for a determination of payments, not for a determination of knowledge or intent, as would be consistent with Wisconsin law. *See Thomas*,

---

[5]Black's Law Dictionary (9th ed. 2009) provides the following definition:

theft, n. (bef. 12c) 1. The felonious taking and removing of another's personal property with the intent of depriving the true owner of it; larceny. 2. Broadly, any act or instance of stealing, including larceny, burglary, embezzlement, and false pretenses.• Many modern penal codes have consolidated such property offenses under the name "theft." — Also termed (in Latin) *crimen furti*. See LARCENY. Cf. ROBBERY.
"[T]he distinctions between larceny, embezzlement and false pretenses serve no useful purpose in the criminal law but are useless handicaps from the standpoint of the administration of criminal justice. One solution has been to combine all three in one section of the code under the name of 'larceny.' This has one disadvantage, however, because it frequently becomes necessary to add a modifier to make clear whether the reference is to common-law larceny or to statutory larceny. To avoid this difficulty some states have employed another word to designate a statutory offense made up of a combination of larceny, embezzlement, and false pretenses. And the word used for this purpose is 'theft.' 'Theft' is not the name of any common-law offense. At times it has been employed as a synonym of 'larceny,' but for the most part has been regarded as broader in its general scope. Under such a statute it is not necessary for the indictment charging theft to specify whether the offense is larceny, embezzlement or false pretenses." Rollin M. Perkins & Ronald N. Boyce, *Criminal Law* 389–90 (3d ed. 1982).

13

Case 10-02702-mdm    Doc 12    Filed 08/30/11    Page 13 of 14

729 F.2d 502. *Meyer v. Rigdon* did not establish a federal standard for defalcation for proceedings under 11 U.S.C. § 523(a)(4), nor did it reverse *Thomas* with respect to Wisconsin theft by contractor cases under subsection 523(a)(4).

Here, the underlying judgment arose under Wisconsin's theft by contractor statute, and while the stipulation did not admit intentional or wrongful conduct, Paragraph 2 admitted that the damages provided for were "caused by Defendant's theft by contractor." Consequently, the defendant has admitted violation of the statute. *See Klingman v. Levinson*, 114 F.3d at 627 (holding stipulation waived defense of issue preclusion). The provisions of the statute meet all the elements for nondischargeability under 11 U.S.C. § 523(a)(4), the damages have been determined, and the defendant's debt to the plaintiff is not subject to discharge.

The plaintiff's motion for summary judgment is granted. A separate order consistent with this opinion will be entered.

August 30, 2011

Margaret Dee McGarity
United States Bankruptcy Judge